UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM J. FORD,                         CASE NO. 19-13207

       *Plaintiff*,                    HON. NANCY G. EDWARDS
*v.*                                     DISTRICT JUDGE

ROSILYN JINDAL, et al.                   HON. PATRICIA T. MORRIS
                                         MAGISTRATE JUDGE

       *Defendants*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND TO DISMISS (ECF No. 30.)

## I.     RECOMMENDATION

In this prisoner's civil rights case, Plaintiff's complaint alleges violations of 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), and § 504 of the Rehabilitation Act. The present matter is Defendants MDOC and Judy Crisenbery's motion for summary judgment and to dismiss. (ECF No. 30.) Briefing is complete.[1] (ECF Nos. 30, 34–35.) For the reasons stated below, I **RECOMMEND** that Defendants' motion be **GRANTED** in part and **DENIED** in part. If this Report is adopted, Defendant Crisenbery will be dismissed from this action, and Defendants MDOC, Jindal, Bhavsar, Corizon Health Care Services, Campbell, Barth, and Westbay will remain.

---

[1] Plaintiff filed a sur-reply. (ECF No. 36.) As Defendant correctly points out, this sur-reply is not allowed under the Federal Rules of Civil Procedure or the Local Rules of the Eastern District of Michigan. (ECF No. 37, PageID.449.) Accordingly, the sur-reply will not be considered.

II.    **REPORT**

A.    **Standard of Review**

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his or her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587–88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative

2

evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479–80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251–52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the

3

complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

### B.  Arguments and Analysis

Defendants argue that summary judgment should be granted because Plaintiff failed to exhaust his administrative remedies against them and that Plaintiff's claims against them should be dismissed because of Eleventh Amendment immunity.

### 1.  Plaintiff's Failure to Exhaust Administrative Remedies

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This is the exhaustion requirement of the Prison Litigation Reform Act (PLRA) of 1995. *See Porter v. Nussle*, 534 U.S. 516, 519–20 (2002). Under this provision, the *Porter* Court held that "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532.

The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" *Id.* at 524. Stated further: "Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 525 (citation omitted). Also, this could result in an administrative record of the controversy for the court to review, or alternatively filter out frivolous claims. *Id.*

The extent of the exhaustion requirement has been the subject of litigation. "In *Woodford*, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules[.]'" *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91 (footnote omitted).

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC PD 03.02.130 (eff. 7/9/2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to

resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(V). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . ." *Id.* The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B), (FF), (GG). *Woodford* and *Jones* require inmates to file grievances that conform to MDOC

procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

According to MDOC records, Plaintiff submitted five grievances through Step III. Two of those three were ultimately denied and three were rejected. (ECF No. 30-4, PageID.381–82.) Defendants argue that Plaintiff did not properly exhaust any of these five grievances.

Turning first to the Defendant's particular argument that Plaintiff failed to name MDOC as a party in two grievances (ARF-19-05-1217D and ARF-19-03-0679-12F). Defendant cites MDOC policy requirements that the names of all people involved on the issue should be included in the grievance.[2] Consequently, this suggests that there was no proper exhaustion as to MDOC. However, this argument appears to have been summarily rejected in *Annabel v. Mich. Dep't of Corr.*, 2020 WL 919700 at *1 (W.D. Mich. 2020) ("Defendants' argument goes too far. The MDOC prison grievance policy directive does not explicitly address whether a grievance can be filed against the MDOC.") There, as in this case, Defendant has the burden to show that Plaintiff failed to exhaust the administrative remedies, and I find that Defendant has not done so as to this MDOC Defendant.

Turning next to Defendant Crisenbery, in reviewing the contents of the five Step-III level grievances that Defendant cited, none of the issues raised appear to address Defendant Crisenbery directly by name. The focus of Defendant Crisenbery's alleged

---

[2] *See*, *e.g.*, MDOC Policy Directives on Prisoner Grievances; ECF No. 30-2, ¶ R; ECF No. 30-3, ¶ S

actions, according to Plaintiff's amended complaint, appears to be denials of Plaintiff's requests or needs for a single-person cell, wheelchair seat cushion, and air mattress. (ECF No. 21, PageID.221–22.) These requests or needs were the subject of RGC-19-01-0128-28b (which appears to be identified as RGC19010012812I in the record at ECF No. 30-4, PageID.400). Although Defendant Crisenbery is noted as an "R.N." on this court's docket Defendant's brief clarifies that she is a Housing Unit Manager (HUM) (ECF No. 30, PageID.345); thus, when Plaintiff's grievance refers to the HUM, it is safe to assume that the "H.U.M. Manager" that Plaintiff spoke to is Defendant Crisenbery. (*See* ECF No. 30-4, PageID.400.) This matter was denied at Step I, (ECF No. 30-4, PageID.401), rejected as untimely at Step II, (*Id.* at 399.), and rejected as vague at Step III (*Id.* at 398.).

Plaintiff argues in his response to this motion that, in light of his transfer within the Michigan Department of Corrections in the midst of his grievance at Step I and Step II, he did everything he could to timely pursue his grievance, and thus Defendants' summary judgment motion should not be granted. A prisoner's subsequent transfer to another prison facility does not relieve him of his duty to fully exhaust his administrative remedies at the facility where the claims arose. *Price v. Jordan*, 2016 WL 5109534, at *3 (E.D. Mich. Aug. 8, 2016)(collecting cases). Further, under these facts, Plaintiff does not appear to have been stymied by the transfer because his grievance was not finally rejected as untimely. Instead, Plaintiff's grievance was rejected as vague at Step III. A vague grievance, which does not comply with MDOC policy requirements, cannot provide proper exhaustion. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). This conclusion also is supported by the rationale behind the grievance policy since a vague grievance denies the parties—the

subjects of the grievance—an opportunity to take their own corrective action, and that combined with subsequent attempts at litigation runs contrary to the policy of the PLRA. This conclusion is appropriate when accepting Plaintiff's claimed timeline as true. Plaintiff's grievance (RGC 19-01-0128-28b) document reveals that it was denied on February 4, 2019, and the denial was returned to Plaintiff on February 12, 2019. (ECF No. 30-4, PageID.400–01.) Plaintiff claims that he did not receive the denial in the mail on February 12th, and the next day he was transferred to a new MDOC facility. (ECF No. 30, PageID.418.) Plaintiff claims he submitted three kites, to either his current or former grievance coordinator at the respective facilities, and ultimately, he received his Step II grievance form on March 26, 2019, with a due date of February 28, 2019. (*Id.*) This was rejected as untimely on April 2, 2019, and the form was returned to Plaintiff on the same date. (ECF No. 30-2, PageID.399.) Without any further explanation or argument from Plaintiff here, the record shows he proceeded to Step III grievance on April 18, 2019 (ECF No. 30-4, PageID.381), and this was rejected as vague on May 30, 2019, and mailed to Plaintiff on June 7, 2019. (*Id.* at 398.)

Consequently, for these reasons, summary judgment is appropriate based on a failure to exhaust as to Defendant Crisenbery, but not as to Defendant MDOC.

### 2.    Eleventh Amendment Immunity

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment's limitations have been extended

to cases brought by "'citizens against their own states'". *See Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002) (quoting *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001)). Further limitations include, "in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Also, for individuals sued in their official capacities that is "in all respects other than name, to be treated as a suit against the entity" "[a]s long as the governmental entity receives notice and an opportunity to respond." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).

There are exceptions to the Eleventh Amendment limitations. "States may consent to be sued in federal court or Congress may abrogate their sovereign immunity." *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997) (citation omitted).

In fact, Plaintiff does not object to Defendants MDOC and Crisenbery (in her official capacity) from being dismissed from this case on Eleventh Amendment grounds. (Pl. Resp., ECF No. 34, PageID.421.) Ordinarily, this conclusion would be appropriate, as MDOC as a state department cannot be sued in federal court, per *Pennhurst*, and similarly when a state employee is sued in their official capacity, they are also protected under Eleventh Amendment immunity. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985).

However, Plaintiff has sued MDOC, in Counts II and II[3], under Title II of the ADA and Sec. 504 of the Rehabilitation Act of 1973. (ECF No. 21, PageID.215–16.) Regarding

---

[3] Presumably, this is a typographical error on the part of Plaintiff. The second Count II should be Count III, but then every other Count would need to be renumbered.

a Defendant's claim of Eleventh Amendment immunity, the Supreme Court has recognized and "accepted [ADA § 12202] as an unequivocal expression of Congress's intent to abrogate sovereign immunity." *U.S. v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–64 (2001)). In analyzing a Title II claim, a court must

> determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843, 847 (6th Cir. 2009) (quoting *Georgia*, 546 U.S. at 159). In other words, the constitutional question of abrogation of Eleventh Amendment immunity "'will be reached only after finding a viable claim under Title II.'" *Id*. at 847–48 (quoting *Haas v. Quest Recovery Servs. Inc.*, 247 F. App'x 670, 672 (6th Cir. 2007)). Next, claims under the Rehabilitation Act are reviewed similarly to claims under the ADA. *Id.* at 849 (quotation omitted).

In this case, Defendant MDOC does not present analysis of the viability of the Plaintiff's claims under the ADA or the Rehabilitation Act. Such an omission is fatal to Defendant's motion, because as stated above, consideration of Eleventh Amendment immunity can only follow a viable ADA/Rehabilitation Act claim. Here, that is not possible without Defendant's analysis.

Accordingly, dismissal of Plaintiff's claims is appropriate based on Eleventh Amendment immunity as to Defendant Crisenbery in her official capacity, and not to

Defendant MDOC.

**C.    Conclusion**

For the reasons stated above, I **RECOMMEND** that Defendants' motion for summary judgment or dismissal be **GRANTED** as to Defendant Crisenbery based on Plaintiff's failure to exhaust and any official capacity suit based on Eleventh Amendment immunity; and that the motion as to Defendant MDOC be **DENIED**.

**III.   <u>REVIEW</u>**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to

which it pertains. Not later than 14 days after service of an objection, the opposing party

may file a concise response proportionate to the objections in length and complexity. Fed.

R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to Objection

No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections

are without merit, it may rule without awaiting the response.

Date:  December 1, 2020                                S/ PATRICIA T. MORRIS
                                                      Patricia T. Morris
                                                      United States Magistrate Judge