**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WILLIAM J. FORD,

      *Plaintiff*,

                    CASE NO. 2:19-CV-13207
                    DISTRICT JUDGE NANCY G. EDMUNDS
                    MAGISTRATE JUDGE PATRICIA T. MORRIS

*v.*

ROSILYN JINDAL, JUDY CRISENBERY,
JANAK R. BHAVSAR, MICHIGAN DEPARTMENT
OF CORRECTIONS, CORIZON HEALTH
CARE SERVICES, CAMPBELL, LAURA BARTH,
and DANIELLE WESTBAY

      *Defendants*.

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR**
**LEAVE TO FILE SECOND AMENDED COMPLAINT**
**AND FOR EXTENSION OF TIME (ECF No. 49)**

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's Motion

for Leave to File an Amended Complaint, (ECF No. 49), be **GRANTED IN PART** as to

allow Plaintiff to (1) amend the caption, (2) amend the Eighth Amendment claims as

against Corizon Health, Inc., (3) include the medical malpractice claim, and (4) as to the

extension of time and **DENY** the remaining proposed amendments.

## II.    REPORT

### A. Background

On October 31, 2019, Plaintiff William J. Ford filed a complaint under 42 U.S.C.

1983, the Americans with Disabilities Civil Rights Act of 1990, as amended, 42 U.S.C.

§12131 *et seq*., and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq*. against Defendants Rosilyn Jindal, P.A., Judy Crisenbery, R.N., Janak Bhavsar, M.D., and the Michigan Department of Corrections (MDOC). (ECF No. 1.) Jindal and Bhavsar are employed by Corizon Health, Inc.; Crisenbery is employed by MDOC. (ECF No. 49, PageID.524.)  In his original complaint, Plaintiff, who has several medical impairments such as atrial fibrillation, congestive heart failure, and more, (ECF No. 1, PageID.3-4), alleged that Defendants knew of his medical conditions and refused to give Plaintiff his medications because "it would be too expensive for MDOC to bear [sic] the cost." (*Id*. at PageID.4.) Plaintiff alleged that Defendants gradually discontinued some of his medications, and immediately discontinued other medications, as a means of saving money. (*Id*. at PageID.4-5.) Plaintiff also alleges that Defendants arbitrarily denied his request for special accommodations due to his medical issues, including his requests for a single man cell, an air mattress, a seat cushion for his wheelchair, and a new wheelchair with a brace to support where his right leg was amputated. (*Id*. at PageID.6, 8.) Plaintiff also requested to visit a pain management clinic, which was also denied. (*Id*. at PageID.8.)

On November 22, 2019, the Court stayed the case and referred it to the *Pro Se* Early Mediation Program (ECF No. 10); but on December 30, 2019, Plaintiff filed a motion to be excluded from the program, (ECF No. 15), and the motion was granted. (ECF. No. 16.)

Plaintiff's motion for leave to file a first amended complaint was granted on February 28, 2020, (ECF No. 23), which added "Corizon Health Care Services," "Hum Campbell," Laura Barth, and Danielle Westbay as defendants, including additional counts

against those Defendants under the Eighth Amendment and a count "challenging the constitutionality of Corizon's customs and policies." (ECF No. 49, PageID.525.)

On April 28, 2020, Crisenbery and MDOC filed a motion for summary judgment based on failure to exhaust administrative remedies and a motion to dismiss based on Eleventh Amendment immunity. (ECF No. 30.) This Court granted the motion in part and denied the motion in part, dismissing Crisenbery from the case (ECF No. 38, 39); Plaintiff filed a motion for reconsideration, (ECF No. 42), which is still pending. On February 12, 2021, this Court appointed counsel for Plaintiff. (ECF No. 45.)

After Plaintiff filed the present motion, with the assistance of counsel, Defendants Corizon, Jindal, and Bhavsar filed a response (ECF No. 50) and MDOC also filed a response on behalf of MDOC and MDOC employee Defendants. (ECF No. 51.) Plaintiff then filed a reply to each response. (ECF Nos. 52, 53.)

### B. Motion for Leave to Amend the Caption

Plaintiff first seeks leave to amend the names of two Defendants. Plaintiff seeks to change "Hum Campbell" to Janet Campbell and "Corizon Health Care Services" to Corizon Health, Inc. Plaintiff notes that Defendants do not oppose "amending the caption to correct the names of Campbell and Corizon." (ECF No. 49, PageID.527.) Indeed, Defendants do not appear to oppose this motion. I recommend granting this motion to amend the caption to properly reflect the accurate names of the Defendants.

### C. Motion for Leave to Amend Complaint

Plaintiff's motion for leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a) provides that a party may amend pursuant to the following:

(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a); *Berry v. Specialized Loan Servicing, LLC*, No. 2:18-cv-02721, 2020 WL 3485577, at *4 (W.D. Tenn. Feb. 24, 2020). Under this Rule, generally, a party may amend its pleading once as a matter of course, but in all other cases it may amend a pleading only with the opposing party's consent or with leave of the court. *Commerce Benefits Group, Inc. v. McKesson Corp.*, 326 Fed. App'x 369, 376 (6th Cir. 2009).

A court has discretion in allowing amendments. *Berry*, 2020 WL 3485577, at *4 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Troxel Manuf. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970–71 (6th Cir. 1973)). In its discretion to allow an amendment, a court considers factors such as undue delay, repeated failure to cure deficiencies by amendments previously allowed, bad faith or dilatory motive, futility of an amended pleading, and undue prejudice to the opposing party. *Berry*, 2020 WL 3485577, at *4 (citing *Shane v. Bunzl Distribution USA, Inc*., 200 F. App'x 397, 406 (6th Cir. 2006)). However, "delay alone is an insufficient reason to deny a motion to amend." *Minor v. Northville Public Schools*, 605 F. Supp. 1185, 1201 (E.D. Mich. 1985) (internal quotation omitted); *see Moore v. City of Paducah*, 790 F.2d 557, 561 (6th Cir. 1986).

4

Here, because Plaintiff has already filed an amended complaint once, this amendment is at the discretion of the Court. Defendants argue the Court should refuse to allow Plaintiff to amend his complaint. Defendants raise several arguments, including that the amendment violates of Rule 8, is brought in bad faith, and that all proposed amendments would be futile. I address each argument in turn.

### i.    Rule 8

All Defendants, in both responses, argue that Plaintiff's proposed amended complaint is in violation of Rule 8.

Rule 8(a) requires a plaintiff to file a complaint that sets forth "a short and plain statement of the claim . . .." Fed. R. Civ. P. 8(a)(2).  In addition, Rule 8(d)(1) states that "[e]ach allegation must be simple, concise, and direct." "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action, and it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

In *Kensu v. Corizon, Inc*., the Sixth Circuit recently held, "[w]hat is a short and plain statement of a claim or a simple, clear, and direct allegation will, of course, depend on the totality of the circumstances: more complicated cases will generally require more pleading. What Rule 8 proscribes is obfuscation of the plaintiff's claims." __ F.4th__, 2021 WL3043268, at *3 (6th Cir. 2021) (citing *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 514

5

(2002)). The Sixth Circuit elaborated, "[t]he district court and defendants should not have to 'fish a gold coin from a bucket of mud' to identify the allegations really at issue." *Id*. (quoting *United States ex rel. Garst v. Lockheed-Martin Corp*., 328 F.3d 374, 378 (7th Cir. 2003)). They concluded, "[s]o, while excessive length may indicate a lack of requisite concision and simplicity, it cannot be the sole factor justifying dismissal." *Id*. (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132–33 (9th Cir. 2008) (finding it an abuse of discretion to dismiss with prejudice a "long but intelligible" complaint that "allege[d] viable, coherent claims")).

Defendants argue that Plaintiff's proposed second amended complaint is in violation of Rule 8—they complain that it is an "[89]-page manifesto with [417] paragraphs, excluding the relief sought. This proposed pleading is 'prolix and muddled' for many pages and paragraphs requiring the Court and Defendants to take needless excursions just to decipher the underlying basis of the claims." (ECF No. 50, PageID.891) (citing *Echols v. Voisine*, 506 F. Supp. 15, 17 (E.D. Mich. 1981.)) Defendants also argue that the complaint is "long on conclusory claims, but short on allegations of fact" and that they "do not have sufficient notice of the claims against them." (ECF No. 51, PageID.918-19.)

Although the proposed amended complaint is long, to be sure, I decline to suggest that it is incoherent. Defendants are correct that the complaint contains 417 paragraphs, excluding relief sought. And while this number seems daunting, it also appears that Plaintiff has taken steps to organize the information: Plaintiff uses numbered paragraphs, provides new headings for each section identifying which count and which ground for relief he is discussing as well as which Defendants it applies to, and writes in short and complete

sentences. Further, while Plaintiff includes an abundance of information in the complaint that Defendants claim is prolix, all of the information pertains to the allegations of fact. For example, Plaintiff includes a section in the complaint titled "Corizon's History of Civil and Human Rights Abuses." (ECF No. 49-2, PageID.556.) Here, Plaintiff details several previous lawsuits to which Defendant Corizon was a party wherein plaintiffs alleged similar facts as Plaintiff in this case. (*Id*. at PageID.556-559.) These inclusions are not irrelevant to the allegations Plaintiff makes. And while they make the complaint lengthy, "[w]hat is a short and plain statement of a claim or a simple, clear, and direct allegation will, of course, depend on the totality of the circumstances: more complicated cases will generally require more pleading." *Kensu*, 2021 WL 3043268, at *3. Length alone is not a sufficient reason to deny leave to amend based on Rule 8 as Defendants argue, and I suggest that the content of the proposed complaint is not muddled or prolix, but comprehensive and, indeed, relevant to the claims Plaintiff makes. Thus, I suggest declining to deny Plaintiff's motion on this basis.

### ii. Bad Faith

Next, Defendants Corizon, Jindal, and Bhavsar argue that Plaintiff's motion should be denied because he brings it in bad faith. (ECF No. 50, PageID.892-93.) Defendants cite to *Ashley Furniture Indus. Inc. v. American Signature, Inc*. in support of their argument. No. 11-cv-00427, 2012 WL 1031411, at *3 (S.D. Oh. Mar. 27, 2012). However, my read of *Ashley Furniture* persuades me that the motion should not be denied for bad faith. The Court in *Ashely Furniture* does state, as Defendant argues, that a motion to amend is brought in bad faith if it is a tactical move to defeat a dispositive motion. (ECF No. 50,

PageID.893); *Ashley Furniture, Inc.*, 2012 WL 1031411, at *3. But *Ashely Furniture* ultimately held there was no bad faith:

> It is unclear to the Court, however, what tactical advantage, or significant prejudice, will result from allowing amendment. Although Defendants have moved for summary judgment on Plaintiff's current claims, the Court has denied the Motion without prejudice subject to refiling. Thus, a ruling on dispositive matters is not imminent. The Court, therefore, finds little merit to any contention that Plaintiff is "engaging in tactical maneuvers to force the court to consider various theories seriatim." *Indus. Assets, Inc. v. Capital Equip. Sales Co., Inc.*, 116 F.3d 1480 (Table), 1997 WL 359061, at *4 (6th Cir. June 26, 1997) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993)).

*Ashley Furniture, Inc.*, 2012 WL 1031411, at *3.

In discussing whether any prejudice would result from allowing an amendment, the Court noted in a footnote,

> Of course, Defendants will suffer the inherent prejudice of having to defend against Plaintiff's new claims. This obligation to defend is not the type of undue prejudice typically considered in deciding whether to allow amendment. See *Grant v. Target Corp.*, No. 2:10–cv–823, 2012 WL 871093, at *2–3 (S.D. Ohio Mar.14, 2012) (discussing "undue prejudice" within the context of a motion for leave to amend).

*Ashley Furniture, Inc.*, 2012 WL 1031411, at *3, fn. 3.

I suggest the same is true here. One motion for summary judgment was filed, which was granted in part—Defendant Crisenbery was dismissed from the case.[1] And the

---

[1] I pause here to note that any claims brought against Crisenbery should be denied as futile at this time, as she is presently dismissed from the case. I acknowledge that Plaintiff has filed a motion for reconsideration regarding the dismissal of Crisenbery. That motion has not yet been decided—as such, I operate under the assumption that, at this time, Crisenbery is still dismissed as a defendant. In the event that the motion for reconsideration is granted and Crisenbery is not dismissed, the analysis regarding the other named defendants should apply to Crisenbery, too. Plaintiff does provide the following: "The proposed amendment adopts all of the allegations of the First Amended Complaint as to Crisenbery, who was dismissed from the case, in order to preserve arguments for appeal and reserve the right to amend in the event the Court reverses its previous dismissal." (ECF No. 49, PageID.528.)

deadline for dispositive motions is September 30, 2021. As in *Ashley Furniture*, this deadline is not "imminent."        Thus, the undersigned declines to suggest that a "tactical" move is hidden under the guise of the present motion.

Next, as in *Ashley Furniture*, "Plaintiff's additional claims involve factual and legal issues that are similar to and implicated by its current [] claims. Consequently, it is unlikely amendment will require Defendant American Signature to 'conduct the defense in a substantially different manner . . . .'" *Ashley Furniture, Inc.*, 2012 WL 1031411, at *3 (quoting *Grant v. Target Corp.*, No. 2:10–cv–823, 2012 WL 871093, at *3 (S.D. Ohio Mar.14, 2012)). The additional claims raised by Plaintiff arise out of the same facts and general legal issues as the original complaint. Defendants argue that Plaintiff "does not raise new substantive claims, but instead repackages his claims anew in state law breach of contract and tort law[.]" (ECF No. 50, PageID.893.) Even conceding that this complaint raises state law claims, that they are not "new substantive claims," to quote Defendant, suggests that the subject matter of the claims has not significantly differed. As in *Ashley Furniture*, these amendments are unlikely to "substantially" impact Defendants' defense. "Plaintiff's additional claims involve factual and legal issues that are similar to and implicated by its current copyright claims." *Ashley Furniture, Inc.*, 2012 WL 1031411, at *3.

Further, this amendment comes after Plaintiff has secured counsel. As this Court stated in *Litt v. Midland Credit Mgmt., Inc.*, "[g]iven these changed circumstances, it is natural that the plaintiff would see fit to amend his pleading once represented by counsel

and when required to prosecute his claims in a United States District Court." No. 13-cv-12393, 2014 WL 1977137, at *3 (E.D. Mich. May 15, 2014.)

I suggest declining to deny the motion based on bad faith.

### iii. Futility

Next, Defendants argue that all the proposed new claims should be denied as futile. The test for futility is whether the amended complaint could survive a Rule 12(b)(6) motion to dismiss. Such a motion tests the sufficiency of the complaint and will be granted if the plaintiffs have failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action." *Id.*

### a. ADA / Rehabilitation Act

Plaintiff seeks to amend his allegations against MDOC Defendants falling under the ADA and the Rehabilitation Act. "In order to make a prima facie showing of discrimination in violation of the ADA, a plaintiff must prove that he '(1) has a disability; (2) is otherwise

10

qualified; and (3) is being excluded from participation in, being denied benefits of, or being subject to discrimination under, the program solely because of the plaintiff's disability.'" *Glover v. Rivas*, No. 19-c-v-13406, 2021 WL 963934, at *7 (E.D. Mich. Mar. 15, 2021) (quoting *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005)).

In *Glover*, this Court found the plaintiff alleged that the defendant "violated the ADA by failing to provide medical clearance allowing him to use elevators and to sit at handicapped-designated areas." *Glover*, 2021 WL 963934, at *7. But this Court found that "the Sixth Circuit has recognized that 'neither the [Rehabilitation Act] nor the ADA provide a cause of action for medical malpractice[,]'" *Glover*, 2021 WL 963934, at *7 (quoting *Baldridge-El v. Gundy*, 238 F.3d 419, at *2 (6th Cir. 2000)), and found that "several other federal courts have similarly held that medical decisions 'do not ordinarily fall within the scope of the ADA or the Rehabilitation Act.'" *Glover*, 2021 WL 963934, at *7 (quoting *Fitzgerald v. Correction Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Stevenson v. Pramstaller*, No. 07-cv-14040, 2009 WL 804748, at *3 (E.D. Mich. Mar. 24, 2009)). There, this Court dismissed the plaintiff's claims under the ADA and the Rehabilitation Act.

The facts are similar here. Plaintiff's allegations sound in medical malpractice and his disagreements with the medical care afforded to him. While Plaintiff alleges that he did not receive the medical care he requested, (see, e.g., ECF No. 49-2, PageID.571-77), he does not allege that he was denied benefits solely *because of* a disability. *Glover*, 2021 WL 963934, at *7. Rather, he alleges that he was denied the medical care he requested because

of the costs and alleged policies by MDOC and Corizon. Thus, I suggest these amendments would be futile.

### b. Eighth Amendment Deliberate Indifference

#### i.    MDOC Defendants

Plaintiff seeks to "explicate" his existing Eighth Amendment claims against Defendants, adding "more robust and detailed allegations, requests for relief, and exhibits[.]" (ECF No. 49, PageID.528.) Defendants argue that these amendments are futile.

MDOC, Crisenbery, Campbell, Barth, and Westbay (MDOC Defendants) argue that these amendments are futile. I reiterate that at this stage and when analyzing futility, Plaintiff need only present a "set of facts in support of its claims that would entitle it to relief." *Bovee*, 272 F.3d at 60.

### a. Eleventh Amendment Immunity

MDOC Defendants argue that the Eighth Amendment proposed amendments brought against them are futile because they are entitled to Eleventh Amendment immunity. This Court previously held, in response to Defendants' April 28, 2020 motion for summary judgment (ECF No. 38), that Defendant Crisenbery should be dismissed and all other Defendants remain, although I note that only Defendant Crisenbery was a part of the motion for summary judgment. (ECF No. 38; adopted by ECF No. 39). This Court found that dismissal was appropriate for Crisenbery based on Eleventh Amendment immunity. (*Id*. at PageID.460-63.)

Here, Defendants MDOC, Campbell, Barth, and Westbay argue the Eighth Amendment proposed amended allegations against them would be futile because they are

entitled to Eleventh Amendment immunity. I note that this analysis applies to those parties who were not included or analyzed in the prior motion for summary judgment.

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment's limitations have been extended to cases brought by "'citizens against their own states.'" *See Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002) (quoting *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001)). Further limitations include, "in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

There are exceptions to the Eleventh Amendment limitations. "States may consent to be sued in federal court or Congress may abrogate their sovereign immunity." *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997) (citation omitted). But "[i]t is well established that § 1983 does not abrogate the Eleventh Amendment and that Michigan has not consented to the filing of civil rights suits against it in federal court. We have consistently held that neither MDOC nor the parole board is a 'person' that may be sued for money damages under § 1983." *Harrison v. State of Mich.*, 722 F.3d 768, 771 (6th Cir. 2013). MDOC, as a state department, cannot be sued in federal court, per *Pennhurst*, and similarly when a state employee is sued in their official capacity, they are also protected under Eleventh Amendment immunity. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985).

13

Thus, I suggest that the proposed amended claims brought against Defendants MDOC, Westbay, Barth, and Campbell in their official capacities and under Section 1983 and the Eighth Amendment[2] would be futile.

### c. Exhaustion

Defendants also argue that the Eighth Amendment amended allegations against them would be futile because they were not properly exhausted. When Defendants moved for summary judgment on this same basis, this Court held, "Defendant has the burden to show that Plaintiff failed to exhaust the administrative remedies, and I find that Defendant has not done so as to this MDOC Defendant." (ECF No. 30, PageID.458). The same is true here and the reasoning is the same. I decline to reiterate my analysis here where this issue has already been litigated, analyzed, and decided. The exhaustion argument regarding MDOC fails.[3]

Upon review of the grievance report provided in Defendants' motion for summary judgment, it is true that Plaintiff fails to name Defendants Campbell, Barth, or Westbay— and to the extent any of them are referred to, none of the grievances against any of those individuals are fully exhausted. (*See, e.g.*, ECF No. 30-4 (MDOC Step III Grievance Report.))

---

[2] I note that this analysis applies only to the effect of the Eleventh Amendment on Plaintiff's proposed Eighth Amendment claims, and not the claims brought under the ADA or Rehabilitation Act. As analyzed in response to Defendants prior motion for summary judgment, the Eleventh Amendment is abrogated by the ADA. The Supreme Court has recognized and "accepted [ADA § 12202] as an unequivocal expression of Congress's intent to abrogate sovereign immunity." *U.S. v. Georgia*, 546 U.S. 151, 154 (2006). Defendants only raise the Eleventh Amendment in response to Plaintiff's Eighth Amendment proposed allegations.

[3] However, as discussed above, the Eighth Amendment proposed amendments against MDOC should still be denied under the Eleventh Amendment.

14

Thus, I suggest the addition of Campbell, Westbay, or Barth would be futile. Because it would be futile to add these parties based on exhaustion, I decline to further analyze the futility of these three individuals based on their other arguments, including personal involvement.

### ii.    Corizon Defendants

Corizon Defendants (Corizon, Jindal, and Bhavsar) also take issue with the Eighth Amendment claims brought against them in the proposed amended complaint.

### a. Corizon

"A plaintiff that sues a private or public corporation for constitutional violations under Section 1983 must establish that a policy, practice, or custom caused the alleged injury." *Kitchen v. Corizon Health, Inc*., No. 16-cv-1068, 2017 WL 10543997, at *6 (W.D. Mich. Nov. 10, 2017) (citing *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998)). "The Sixth Circuit has specifically held that, like a municipal corporation, a private corporation's 'liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights.'" *Kitchen*, 2017 WL 10543997, at *6 (citing *Starcher v. Corr. Med. Sys., Inc*., 7 F. App'x 459, 465 (6th Cir. 2001)).

Defendant Corizon argues that Plaintiff does not identify an unconstitutional policy or pattern of theirs in the amended complaint. On the contrary, as Plaintiff points out, there is an entire fact section in the proposed amended complaint dedicated to identifying allegedly unconstitutional policies and patterns. (ECF No. 49-2, PageID.556-65.)

In *Kitchen*, the plaintiff was denied access to an inhaler and alleged:

> that Corizon Health, Incorporated is in the business of providing healthcare to MDOC inmates pursuant to a contract with the State of Michigan. Plaintiff claims that Corizon has a policy, custom or practice that allowed its employees to reduce plaintiff's access to 'a rescue inhaler, Q-Var inhaler, albuterol breathing treatments, and/or any other medications designed to treat [plaintiff's] COPD or asthma[ ]' and that such actions had been taken to maximize cost savings at the expense of plaintiff's health and safety.

*Kitchen*, 2017 WL 1054997, at *5. The Court found that Plaintiff pleaded sufficient allegations to defeat Defendant Corizon's motion to dismiss as to Plaintiff's Section 1983 claims regarding Corizon's policy. *Kitchen*, 2017 WL 1054997, at *6.

Here, Plaintiff alleges "[a]mong other things, Corizon's history of providing a fixed number of prescriptions to prisoners despite fluctuations in the prison population and medical needs shows, evidences, proves, and establishes that Corizon's systematic failure to provide a sufficient, adequate, and appropriate number and quality of services is not accidental, inadvertent, or coincidental." (ECF No. 49-2, PageID.562, para. 80.) At this stage, Plaintiff need only "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp.*, 550 U.S. at 555. Further, Plaintiff alleges "policies, practices, and/or customs" of "limiting, capping, and/or rationing services," and their "history of understaffing" lead to "the inhumane treatment of prisoners and the furnishing of inadequate and substandard healthcare." (ECF No. 49-2, PageID.562, paras. 81-82.) I suggest Plaintiff has plead sufficient facts to avoid denial based on futility.

### b. Jindal and Bhavsar

Defendants Jindal and Bhavsar argue that Plaintiff's claims are not enough to substantiate deliberate indifference. They claim that Plaintiff's request for Praxa over the

16

prescribed Coumadin is simply a disagreement with medical judgment, and that Plaintiff presents no factual support for his claims of mental illness or other health issues warranting his requested special accommodations.

Plaintiff alleges that he was prescribed 26 different medications for his conditions before incarceration, and after incarceration was prescribed only eight. (ECF No. 49-2, PageID.569, para. 109.) He also alleges, and provides photocopies of, several kites he sent requesting all of his original medications, a single man cell, an air mattress, psychiatric medication, a "roho" cushion for his wheelchair, and pain medication. (*Id*. at PageID.571-75.) He alleges that his INR was not kept within proper guidelines and provides another kite where he emphatically requests a different type of blood thinner: "tonight the lady only gave me [one] pill a 2.5 mg my god people you are going to kill me like that this matter needs to be fixed NOW please I need a lot more than 11 mg a day[.]" (*Id*. at PageID.578.) Plaintiff alleges that Defendants' failure to adjust his medication caused him to bleed from his nose and ears. (*Id*. at PageID.581, para. 167.)

However, Plaintiff's complaint also includes response kites from the medical staff. Where Plaintiff complained that his INR level was too high, a response kite provided, "[y]our INR is therapeutic now. Your results were sent to you, but the mail was not picked up yesterday. The lovenox is not needed while you are within the therapeutic range." (ECF No. 49-2, PageID.579, para. 160.) When Plaintiff complained that his cardiology appointment was scheduled for every six months instead of his prior every 90 days, a response kite stated, "[f]ollowing your replacement surgery in May the schedule recommended for interrogation was 3 months. Following that interrogation the

recommended interval was 6 months. This is the frequency that was used in the scheduling process." (ECF No. 49-2, PageID.582, para.171, 172.) And regarding Plaintiff's requests for medication for his mental illnesses, a response kite stated, "Sir, if you need to be seen in the clinic for any issue please kite. I understand your [sic] not happy with the determination that you don't get a single cell, air mattress, and roho cushion. Mental Health and Healthcare have guidelines that they need to follow. You do not meet the approval criteria for the above items." (*Id*. at PageID.585, para. 190.) When Plaintiff requested a personal blood sugar meter, instead of using one that was available to all prisoners who needed it, a response kite stated, "[y]ou have not met the criteria to possess a glucometer. You may discuss it with the MP at your next appt." (*Id*. at PageID.590, para. 217.) When Plaintiff sought a restroom detail to use the restroom at any time due to a medication that made him urinate frequently, a response kite provided, "[y]ou may be provided with incontinence garments if you are incontinent of urine. No detail for unlimited access to toilet will be written for the concern you have submitted." (*Id*. at PageID.593, para. 229-230.)

In *Buchanon v. Mohr*, No. 16-cv-279, 2016 WL 4702573, at *2 (S.D. Ohio Sept. 8, 2016), the Court found:

> Based upon his pleadings, Plaintiff is receiving medical care, and those monitoring his medical care have a difference of opinion on the type of care he should receive. "[A] prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation." *DeFreeze v. Zuberi*, 39 Fed.Appx. 137, 139 (6th Cir. 2002); *see, e.g., Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (no deliberate indifference claim where the plaintiff "would have desired more aggressive treatment" but "was at no point denied treatment"); *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("A patient's disagreement with his physicians over

18

the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim."); *Thomas v. Coble*, 55 Fed. Appx. 748, 749 (6th Cir. 2003) (inmate and medical provider's disagreement "over the preferred medication to treat [inmate's] pain...does not support an Eighth Amendment claim")[.]

*Buchanon*, 2016 WL 4702573, at *3. I suggest the same is true here. At no point was Plaintiff completely denied medical care. His allegations, and the kite responses provided in the proposed amended complaint, show that the medical team Defendants disagreed with Plaintiff's alleged need for certain accommodations based on their standards, and provided medical care and follow-ups in accordance with those standards.

I recommend denying the proposed amended deliberate indifference claims against Jindal and Bhavsar as futile.

### c. Breach of Contract, Third-Party & Breach of Contract

Plaintiff also seeks to add allegations that Defendants are liable to him for breach of contract and breach of contract as a third-party beneficiary. Plaintiff refers to the contract between MDOC and Corizon for medical services and argues that he is a third-party beneficiary to that contract.

"Courts in this state have been reluctant to treat prisoners as third-party beneficiaries of contracts between MDOC and medical service providers." *Schweiger v. Correctional Medical Services, Inc.*, No. 11-cv-15345, 2013 WL 1148443, at *10 (E.D. Mich. Mar. 19, 2013) (citing *Caruthers v. Correctional Med. Servs.*, No. 1:10–cv–274, 2011 WL 6402278, at *9 (W.D. Mich. Dec. 21, 2011)); *Russell v. Tribley*, No. 10–14824, 2011 WL 4387589, at *8 n. 2 (Komives, M.J.), magistrate judge's report adopted, 2011

WL 4396784 (E.D. Mich. Sept. 21, 2011); *Haithcox v. Geriner*, No. 06–11756, 2010 WL 1292712, at \*5–6 (E.D. Mich. Mar. 15, 2010) (stating that "engrafting a third party beneficiary theory in what is at its core an Eighth Amendment deliberate indifference claim would be an end run around the vicarious liability rule of *Monell* . . .")*; Price v. Caruso*, No. 1:09–CV–102, 2009 WL 4823865, at \*1 (W.D. Mich. Dec. 9, 2009). The *Schweiger* Court noted that "[t]he Michigan Court of Appeals has not ruled on this issue." *Schweiger*, 2013 WL 1148443, at \*10 (citing *Moffat v. Prison Health Services, Inc.*, Nos. 205651, 305715, 2012 WL 4039711 (Mich. Ct. App. Sept.13, 2012) (declining to rule on whether a prisoner plaintiff stated a claim for breach of contract as a third-party beneficiary)). In *Schweiger*, "[t]he plaintiff has not alleged, either in his complaint or his objections, that MDOC's contract with either CMS or PHS contains an express promise to act for the benefit of the plaintiff or the class of MDOC prisoners in general. The plaintiff has alleged that the defendants entered into contracts to provide adequate health care to the prison population. But that does not establish that the plaintiff was anything more than an incidental beneficiary of those contracts; it is insufficient to demonstrate that the plaintiff may sue for breach of contract as a third-party beneficiary." *Schweiger*, 2013 WL 1148443, at \*10

This Court held the same in *Russell v. Tribley*, No. 10-cv-14824,  2011 WL 4387589, at \*8, fn. 2 (E.D. Mich. Aug. 10, 2011): "I note that courts have generally found that prisoners do not constitute intended third-party beneficiaries of contracts between prisons and private health care providers with standing to enforce the contract, including one Judge of this Court applying Michigan contract law." (citing *Allah v. Hayman*, No. 08–

20

1177, 2011 WL 1322186, at *4 (D.N.J. Apr.1, 2011) (applying New Jersey law and citing cases)); *Haithcox v. Greiner*, No. 06–11756, 2010 WL 1292712, at *5–*6 (Mar. 15, 2010) (Whalen, M.J.), magistrate judge's report adopted, 2010 WL 1292709 (E.D. Mich. Mar.31, 2010) (Tarnow, J.). *See also Boulding v. Sudhir*, No. 15-cv-12706, 2016 WL 8671208, at *4 (E.D. Mich. July 29, 2016):

> Plaintiff also appears to raise a breach of contract claim, positing that he is a third-party beneficiary to the contract between the MDOC and Corizon. I specifically rejected that theory in *Haithcox v. Greiner*, 2010 WL 1292712, *5-6 (E.D. Mich. 2010) (Whalen, M.J.), another deliberate indifference case, where I found as follows:

> "Plaintiff does not have standing as a third party beneficiary under M.C.L. § 600.1405, which provides that '[a]ny person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.' A 'mere beneficial interest in a contract is not enough to confer standing . . . a party having the status of a third-party beneficiary to a contract has the same right to enforce that contract as the promisee.' *Stillman v. Goldfarb*, 172 Mich. App. 231, 431 N.W.2d 247, 251 (1988). Third party beneficiary status 'requires an express promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of the contract.' *Dynamic Construction Co. V. Barton Malow Co.*, 214 Mich. App. 425, 428, 543 N.W.2d 31 (1995) (emphasis added).

> Finally, engrafting a third party beneficiary theory in what is at its core an Eighth Amendment deliberate indifference claim would be an end run around the vicarious liability rule of *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978), which holds that liability under § 1983 cannot be based on a theory of respondeat superior. The Plaintiff cannot evade the strictures of a constitutional claim-or for that matter, a medical malpractice claim-by recasting it as a third party beneficiary claim." (Footnote omitted).

Based on the above guidance I suggest that Plaintiff's contract claims be denied as futile.

### d.  Promissory Estoppel

Plaintiff also seeks to add claims under a theory of promissory estoppel based on the contract between MDOC and Corizon. "[P]romissory estoppel can only be enforced when an express contract on the same subject matter does not exist." *P.A.L. Environmental Safety Corp. v. North American Dismantling Corp.*, No. 19-cv-11630, 2021 WL 634633, at *3 (E.D. Mich. Feb. 18, 2021) (collecting cases) (citing *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 687 (1999) (declining to enforce a promise that "expressly contradicted" to parties' signed contract); *APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003) ("Promissory estoppel may not be used to override the express agreement of the parties contained in written agreements . . . For the court to apply promissory estoppel under Michigan law, it must find that an implied agreement exists between the parties, in the absence of an express contract. (citing *Barber v. SMH, Inc*., 202 Mich. App. 366, 509 N.W.2d 791 (1993))); *Aero Taxi-Rockford v. Gen. Motors Corp.*, No. 259565, 2006 WL 1479915, at *10 (Mich. Ct. App. May 30, 2006) (upholding plaintiff's promissory estoppel claim against defendant as an alternative to a breach of contract claim between plaintiff and defendant's agent, but only if a jury "fails to find the existence of an express contract" on the same subject matter)."

An express, written contract exists between the parties on the precise issue that Plaintiff complains of—in fact, Plaintiff provides that contract in support of his motion. (ECF No. 49-4). Based on the above well-established caselaw from this Court, the Sixth Circuit, and the Michigan Court of Appeals, I suggest denying Plaintiff's proposed claims of promissory estoppel as futile.

### e. Unjust Enrichment

Plaintiff also seeks to add claims of unjust enrichment, similarly regarding the contract between MDOC and Corizon.

"An unjust enrichment claim under Michigan law requires proof of the following: '(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to [the] plaintiff because of the retention of the benefit by the defendant.'" *Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 106 F. Supp. 3d 874, 889 (E.D. Mich. May 22, 2015) (quoting *Erickson's Flooring & Supply Co. v. Tembec, USA, LLC*, 212 Fed.Appx. 558, 564 (6th Cir. 2007)).

"To sustain a claim for unjust enrichment, plaintiff needed to show that defendants received a benefit from plaintiff and that an inequity resulted to plaintiff as a consequence of defendants' retention of that benefit. In such a situation, a contract will be implied by law to prevent unjust enrichment. But a contract cannot be implied when an express contract already addresses the pertinent subject matter." *Liggett Restaurant Group, Inc. v. City of Pontiac*, 260 Mich. App. 127, 137, 676 N.W.2d 633, 639 (2003).

The *Liggett* court also held, "[t]o the extent plaintiff asserts that it can raise an unjust enrichment claim against defendant city of Pontiac because the city was not a party to the contract in question, plaintiff has failed to cite any authority to support this argument. This Court will not search for law to sustain a party's position where that party neglects to cite any supporting authority for its claim."

Plaintiff here does not cite law to support this assertion, either, other than to argue that "these claims are properly brought as alternative theories for relief." (ECF No. 52, PageID.940) (citing *Ilowite v. Diopsys, Inc.*, No. 04-2368, 2008 WL 305267, at *13 (D.

23

N.J. Jan. 13, 2008). To that end, "pleading an express contract and implied contract (whether styled as unjust enrichment or quantum meruit) is allowed when, for instance, there is a dispute between the parties as to whether an express agreement exists." *Llewellyn-Jones v. Metro Property Group, LLC*, 22 F. Supp.3d 760, 793-94 (E.D. Mich. May 27, 2004) (citing *Cascade Elec. Co. v. Rice*, 70 Mich. App. 420, 426–27, 245 N.W.2d 774, 777 (1976) (finding that the plaintiff could bring both actions because the plaintiff performed work that was not contemplated under the express contract and the defendant disputed the existence of an express verbal contract)). Plaintiff writes that "Corizon contends that no contract exists[,]" (ECF No. 52, PageID.940), but does not cite to such an allegation by Corizon. In fact, to the contrary, Corizon's response to the Motion provides that "Plaintiff cannot state a claim for unjust enrichment because *Plaintiff's claims arise from an existing contract* between the MDOC and Corizon." (ECF No. 50, PageID.906) (emphasis added). Such a strategy is not applicable where, as here, there does not appear to be any dispute as to the creation of an express, written contract. Here, an express does contract does exist. Therefore, I suggest this amendment would be futile.

### f.   Negligence, Negligent or Intentional Infliction of Emotional Distress, and Medical Malpractice

Finally, Plaintiff seeks to include claims arising from negligence, negligent or intentional infliction of emotional distress, and medical malpractice.

This Court has found, "The Michigan Supreme Court has implemented a two-part test that a court must use to determine whether a claim sounds in medical malpractice or ordinary negligence: '(1) whether the claim pertains to an action that occurred within the

24

course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience.'" *Buffman v. United States*, No. 13-cv-14024, 2017 WL 9477650, at *4-5 (E.D. Mich. Jan. 27, 2017) (quoting *Bryant v. Oakpointe Villa Nursing Ctr.*, 684 N.W.2d 864, 871 (Mich. 2004)). "If the answers to both of these questions are 'yes,' then the claim sounds in medical malpractice." *Id*.

> The *Buffman* Court held:
>
> With regard to the first question, the Michigan Supreme Court provided that "[a] professional relationship exists if a person or an entity capable of committing medical malpractice was subject to a contractual duty to render professional health-care services to the plaintiff." *Kuznar v. Raksha Corp.*, 750 N.W.2d 121, 126 (Mich. 2008) (citing *Bryant*, supra ). With regard to the second question, the *Bryant* court provided the following guidance:
>
> If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved. *Bryant*, 684 N.W.2d at 872."

*Buffman v. United States*, 2017 WL 9477650, at *5. Plaintiff's allegations similarly take issue with the medical treatment that he received; the allegations arise out of relationships with medical professionals, and regard topics such as the prescriptions of different types of medications and at different frequencies, and the prescription of certain special accommodation devices. (*See, e.g.*, ECF No. 49-2, PageID.571-76.) As in *Buffman*, the answers to both prongs of the Michigan Supreme Court test here are "yes." *Buffman v. United States*, 2017 WL 9477650, at *4-5. Based on this guidance, it appears that Plaintiff's proposed negligence and negligent or intentional infliction of emotional distress

25

amendments would indeed be futile, as his allegations all pertain to the medical care, or

lack thereof, given by medical professionals in the prison. *See Buffman*, 2017 WL 9477650,

at *6 (collecting cases). *See also Alexander v. Galzetta*, No. 16-cv-13293, 2018 WL

3249580, at *15 (E.D. Mich. Feb. 26, 2018), adopted in part by 2018 WL 1556233 (holding

that negligence and intentional infliction of emotional distress claims sounded in medical

malpractice).

Regarding the remaining medical malpractice claim, I note that there appears to be

a split within this district as to whether the Michigan state affidavit or merit requirement is

a procedural or substantive rule:

> The federal district courts in Michigan appear to be split on whether
> Michigan's medical malpractice statutory requirements [which include the
> filing of an affidavit of merit] are substantive or procedural in nature.' *Colen
> v. Corizon Med. Servs*., 2018 WL 1477664, at *17–18 (E.D. Mich. Mar. 27,
> 2018) (comparing cases and declining supplemental jurisdiction over claim);
> *Moore v. Kulkarni*, 2019 WL 4312135, at *8-9 (E.D. Mich. May 31, 2019)
> (noting federal district court split in Michigan but avoiding resolution based
> on recommended dismissal of federal claims and further recommended
> decline of supplemental jurisdiction over state law claims).

*Hall v. Wellpath*, No. 20-cv-10670, 2021 WL 267780, at *3 (E.D. Mich. Jan. 27, 2021)

(Steeh, J.), adopting in part 2020 WL 8465908 (Morris, M.J.). In *Hall*, "[f]ollowing a

thorough analysis, the Magistrate Judge concluded that the affidavit of merit requirement

is procedural because a failure to file an affidavit results in the action being dismissed

without prejudice. The action may then be re-filed within the limitations period. Therefore,

the requirement of the affidavit does not alter the elements of the cause of action and is not

substantive." *Hall*, 2021 WL 267780, at *3. The undersigned elects to again follow this

analysis and therefore suggests that the affidavit rule is a procedural; the failure to comply with the rule is not fatal to Plaintiff's claim at this stage.

Thus, Plaintiff is correct that he need not attach an affidavit of merit per the Michigan state rule. "[I]t has been settled for some time that the Michigan statute outlines a pleading requirement that does not apply to an action in federal court." *Herriges v. Cnty. of Macomb*, No. 19-cv-12193, 2020 WL 3498095, at *11 (E.D. Mich. June 29, 2020) (citing *Long v. Adams*, 411 F. Supp. 2d 701, 705-07 (E.D. Mich. 2006) ("As is clear from [Federal Rule of Civil Procedure] 8(a)'s language, there is no requirement that any affidavit of merit must be filed to commence a medical malpractice case in federal court ... The presence or absence of an affidavit does not render the complaint defective or subject it to dismissal.")).

"More recently, that rule was confirmed by the Sixth Circuit, where it held that a plaintiff filing a complaint in a federal court 'does [not] need an affidavit of merit to state a claim for medical negligence[.]'" *Herriges*, 2020 WL 3498095, at *11 (quoting *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019)).

I suggest that at this stage, the proposed amendments regarding Plaintiff's medical malpractice claims do not appear to be futile and should be allowed.

### D. Motion for Extension of Time

Finally, Plaintiff seeks an extension of time "to serve the summons and complaint on Campbell, Barth, and Westbay." (ECF No. 49, PageID.532.) I recommend granting this motion as it relates to the first amended complaint, wherein Campbell, Barth, and Westbay have been named as Defendants, but have yet to be served. I note that Defendants do not

27

oppose this motion. I recommend extending the deadline to allow Plaintiff 14 additional days to confirm service.

### E. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Plaintiff's Motion for Leave to File an Amended Complaint, (ECF No. 49), be **GRANTED IN PART** to allow Plaintiff to (1) amend the caption, (2) amend the Eighth Amendment claims as against Corizon Health, Inc., (3) amend the medical malpractice claims, and (4) as to the extension of time and **DENY** the remaining proposed amendments. I recommend extending the deadline for service to allow for an additional 14 days.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 20, 2021                          S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge