UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM J. FORD,

        Plaintiff,

v.

ROSILYN JINDAL, JUDY CRISENBERY,
JANAK R. BHAVSAR, MICHIGAN
DEPARTMENT OF CORRECTIONS,
CORIZON HEALTH CARE SERVICES,
CAMPBELL, LAURA BARTH, and
DANIELLE WESTBAY,

        Defendants.

Case No. 19-cv-13207

Honorable Nancy G. Edmunds

_____/

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [97]

In this prisoner civil rights case, Plaintiff William J. Ford alleges he was denied access to adequate medical treatment in violation of the Eighth Amendment to the U.S. Constitution, the Americans with Disabilities Civil Rights Act of 1990, as amended, 42 U.S.C. § 12131 *et seq.* ("ADA"), and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq*. ("Rehabilitation Act"). After prolonged litigation, only Defendants Michigan Department of Corrections and Danielle Westbay remain, (together, "Defendants"). Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 97.) Defendants argue this case should be summarily dismissed because Plaintiff failed to exhaust his claims against Westbay, because Plaintiff cannot show a violation of the Eighth Amendment by Westbay, and because there is insufficient evidence to support Plaintiff's claim that MDOC violated the ADA and the Rehabilitation Act. Plaintiff, through counsel, filed a response in opposition to Defendants' motion and Defendants filed a reply

1

(ECF Nos. 99, 100.) The Court finds oral argument is not necessary as the facts and issues have been sufficiently presented in the parties' briefing. *See* E.D. Mich. L.R. 7.1(h). For the reasons that follow, Defendants' Motion for Summary Judgment is granted.

I.     **Background**

The factual background of this case is one familiar to both the parties and the Court and has been reiterated in several of this Court's prior opinions.[1] The Court therefore repeats only the facts relevant to the present motion.

**A.**

Plaintiff is a prisoner currently confined with the Michigan Department of Corrections ("MDOC"). He is a wheelchair-bound amputee who has several medical and dental impairments including diabetes, heart and vascular problems, generative back disease, chronic pain syndrome, and substantial tooth loss and decay requiring dentures. He also suffers from mental health disorders. On April 8, 2022, Plaintiff filed a Second Amended Complaint against Defendants Danielle Westbay and MDOC, as well as others who have since been dismissed from this action. (ECF Nos. 76, 95.) Plaintiff asserts that Westbay violated the Eighth Amendment and that MDOC violated the ADA and Rehabilitation Act.

**B.**

Danielle Westbay is a dental assistant at Gus Harrison Correctional Facility ("ARF"), where Plaintiff was previously incarcerated. (ECF No. 97-7.) Her job duties include reviewing and responding to prisoner kites, answering phone calls, scheduling

---

[1] As the facts were fully summarized in several prior decisions, the Court incorporates them here by reference. *See* ECF Nos. 38, 58, 72, 73.

patient dental appointments, and other administrative tasks. (*Id.*) She has a dental assistant certificate, but she is not a dental hygienist or dentist nor is she trained in dental hygiene. (*Id.*)

Plaintiff began sending kites to the dental department at ARF as soon as he arrived at the facility, in July 2019. (ECF No. 99-5, PageID.2261; *see also* ECF Nos. 76-39, 76-40, 76-41, 76-42.) He complained of pain and difficulty eating due to his broken and glued together lower denture that had a sharp edge.  (ECF No. 99-5, PageID.2222.) Westbay reviewed Plaintiff's initial kite, considered Plaintiff's situation to be urgent due to his complaints of pain, and scheduled him for the first available appointment. (ECF No. 99-5, PageID.2260.) He was seen by a dentist within two days. (*Id.*) His lower denture later broke in half where it had been previously glued.

After the initial appointment, Plaintiff continued sending kites to the dental department complaining about his ill-fitting and broken dentures, though none of the kites mentioned pain. (ECF Nos. 76-39, 76-40, 76-41, 76-42; *see also* ECF 97-7.) Westbay responded to six of the kites telling Plaintiff he was not eligible for denture repair or replacement services until December 2020, pursuant to MDOC policy which required a prisoner to be incarcerated for 24 months before routine dental services were available.[2] (*Id.*) She suggested that if he had pain from the dentures before then, that he should remove them and eat softer food. (*Id.* at PageID.1533.) Although Plaintiff kept sending kites, Westbay did not schedule him for an appointment at that time. Rather, she responded "[w]e will see you in 12/2020 to start the process for a new denture." (ECF No. 76-41, PageID.1537.)

---

[2] MDOC Policy 04.06.150 (ECF No. 97-2.) *See also* Mich. Comp. Laws 791.203.

Westbay's office was near the diabetic line at the prison, so she would frequently see Plaintiff waiting in line outside her office door. (ECF No. 97-7.) Plaintiff would personally complain to her about his dentures not fitting when he saw her. (*Id.*) They talked about his needs and MDOC's policy many times. (ECF No. 99-5, PageID.2250.) Plaintiff told Westbay he did not care about the policy and that he could not eat. (ECF No. 97-8, PageID.2026.) He did not complain to Westbay about being in pain and he did not appear to her to have a severe medical need requiring urgent attention. (ECF No. 97-7.) Plaintiff would frequently talk to the dentist, Dr. Webster, as well. (ECF No. 99-5, PageID.2253.)

On October 9, 2019, Plaintiff filed a prisoner grievance which stated, in relevant part:

> HUM Campbell, Danielle Westbay, and others to be named later during discovery are named as respondents.
>
> First and foremost, this grievance challenges the MDOC policy, practice, and procedures as to how prisoners with dental problems (urgent) are determined eligible for emergency dental care.
>
> [My] lower dentures recently broke in half. When [I] kited to be seen in an emergent situation, [I] received the following response:
>
> "We will see you in 12/20/20 to start the process for a new denture." Clearly this is outrageous, if not, deliberate indifference to a serious and known medical concern.

(ECF No. 99-4, PageID.2192.) Plaintiff received a response to his grievance on October 22, 2019 stating "Your Step 1 grievance . . . was received in this office on 10/10/2019 and was rejected due to the following reason: Non-greivable (sic) issues. No violations of policy." (*Id.* at PageID.2193.) Plaintiff did not appeal the rejection of this grievance or submit an additional grievance against Westbay.

4

When Plaintiff finally became eligible for dentures under the MDOC policy, he had to wait three additional months to see the dentist. (ECF No. 99-5, PageID.2262-63.) This was likely because ARF had been without a resident dentist for some time and there was a backlog of prisoners waiting for non-emergency appointments.[3] (*Id.*) Westbay scheduled based off of lists that were organized according to which eligible prisoners sent kites to the dental department first. (*Id.* at 2263.) Additionally, the dentist herself was familiar with the patients requesting appointments and would schedule them according to their needs. (*Id.*)

Plaintiff was scheduled and seen by the dentist in March 2021. He was given the choice of a new pair of dentures or a repair of his current dentures. (ECF No. 99-5, PageID.2264.) The dental staff explained that changes to the mouth over time made new dentures the better option, but that the entire process for a new pair of dentures may take close to a year. (*Id.* at PageID.2265.) A repair, on the other hand, would take about 30 days depending on how busy the lab was. (*Id.*) Plaintiff chose to have his dentures repaired because it was a much quicker process. (*Id.* at 2264.) Unfortunately, when the dentures were returned to Plaintiff, they did not fit over his gums. (ECF No. 97-8, PageID.2027.) The dentures rolled around in his mouth and he could not chew with them because they were loose. (*Id.* at PageID.2029.) Plaintiff does not wear them. (*Id.*)

**C.**

Around the same timeframe in 2019, Plaintiff requested various prisoner accommodations from MDOC based on his amputated leg, generative back disease, and

---

[3] Prisoners who had emergency dental issues visited the statewide dentist during the time there was no dentist in residence at ARF. (ECF No. 99-5, PageID.2258.)

nerve damage. He asked for an air mattress, a cushion for his wheelchair, and a leg brace for his "stump to hold [it] up 'cause it hangs over the end of the chair [and] causes pain in [his] hip." (ECF No. 97-8, PageID.2045.) Plaintiff had used a wheelchair cushion when he was admitted, but MDOC did not allow him to keep it. (ECF No. 99, PageID.2156-57.)

ARF's physician assistant ("PA") sometimes places requests through MDOC for certain prisoners to have accommodations she feels are necessary. (ECF No. 99-6, PageID.2333.) She does not have the authority to provide accommodation items on her own, these requests must be approved by MDOC's Assistant Chief Medical Officer ("ACMO"). (*Id.* at PageID.2339.) The PA submitted requests for Plaintiff to have an air mattress and a wheelchair leg brace, but those requests were denied by the ACMO and an alternative treatment plan was provided. *Id.* Plaintiff's request to wear shorts to cover up his leg was also denied. (*Id.* at PageID.2346.) Plaintiff asserts the denials were issued even though the ACMO did not examine him. (ECF No. 97-8, PageID.2068.)

The PA also requested that the ACMO prescribe Neurontin, a drug that can be used to treat pain and nerve damage, to Plaintiff. (ECF No. 99-6, PageID.2378-79.) She thought it was necessary to prescribe this medication, but the request was denied and Plaintiff was never approved for pain medication. (*Id.* at PageID.2389.) Ford is aware of other prisoners in the same facility that receive pain medication and some receive Neurontin. (ECF No. 97-8, PageID.2055.)

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) authorizes a party to move for summary judgment on any claim or defense, or part of any claim or defense. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for

6

evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). "If the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," the court will grant the motion. Fed. R. Civ. P. 56(a). "'[S]ubstantive law will identify which facts are material," and a court will not grant summary judgment "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Anderson*, 477 U.S. at 248.

### III. Analysis

#### A. Exhaustion

Defendants argue that summary judgment should be granted to Westbay because Plaintiff failed to exhaust his administrative remedies against her. The Prison Litigation Reform Act ("PLRA") requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (citation

7

omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal

theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones*, 549 U.S. at 199. Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130. (underlining omitted). If the grievant is not satisfied with the response to the grievance, or if no response is timely received, the grievant may file a Step II appeal within ten business days after receiving the response, or ten days after the response was due. *Id.* Thereafter, to fully exhaust administrative remedies, the grievant must file a Step III appeal. *Id.* Grievances of MDOC policies are prohibited. *Id.*

Plaintiff submitted only one grievance that mentioned Westbay, a Step 1 grievance dated October 9, 2019 that names Westbay and others as the grievance's respondents. (ECF No. 99-4, PageID.2192.) In the grievance, Plaintiff states: "First and foremost, this grievance challenges the MDOC policy, practice, and procedures as to how prisoners with dental problems (urgent) are determined eligible for emergency dental care." (*Id.*) He included the response to his kite requesting dental services, but did not otherwise describe any claim against Westbay specifically or make a complaint that she was indifferent to his medical needs. (*See id.*) The grievance respondent denied the grievance

as a non-grievable issue because it specifically grieved MDOC policy. (*Id.* at PageID.2193.) Plaintiff claims the exhaustion requirement does not apply because exhaustion is not required for non-grievable issues, but this does not change that the grievance in question here was denied as it related to policy and did not relate to Westbay's alleged violation of Plaintiff's constitutional rights.

Plaintiff argues that even if grievable, he was not required to exhaust his administrative remedies within the MDOC grievance process because the grievance procedures are not capable of use. (ECF No. 99, PageID.2160-62.) Though Plaintiff cites caselaw to support this assertion, *see Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016), *Ross* plainly does not apply here. A remedy is unavailable if there is no "possibility" for relief—if an administrative procedure "operates as a simple dead end[,] with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake*, 578 U.S. 632, 643 (2016) (internal quotation marks omitted) (quoting *Booth*, 532 U.S. at 738). But a prisoner's administrative remedies are not unavailable simply because a prisoner has never happened to obtain relief; the prison's failure to afford relief to inmates must be "systemic[]" such that a prisoner could never expect to obtain relief, no matter the circumstance. *Morgan v. Kentucky*, No. 3:17-cv-00474, 2018 WL 715468, at *3 (W.D. Ky. Feb. 5, 2018); *see also Ross*, 578 U.S. at 643 (explaining that an administrative remedy is unavailable where there is no "potential" for relief). Thus, to survive summary judgment, a prisoner must provide "competent and specific evidence" from which a reasonable factfinder could infer that it would be impossible for him or her to obtain relief through the prison's grievance process. *Sango*, 2014 WL 8186701, at *5.

Here, Plaintiff provides no evidence from which a reasonable factfinder could infer that it was impossible for him to obtain relief through the MDOC's grievance process. Further, Plaintiff cites no cases that have found MDOC PD 03.02.130 unconstitutional or incapable of being followed. Indeed, this district routinely screens and dismisses prisoner complaints for failure to exhaust pursuant to the PLRA. As such, Plaintiff's argument is without merit and his claim against Westbay is dismissed for failure to exhaust.

### B. Eighth Amendment Claims Against Westbay

Though Plaintiff failed to exhaust his claim against Westbay, the Court notes that Plaintiff also fails to provide evidence sufficient to establish an Eighth Amendment claim. The Eighth Amendment prohibits "cruel and unusual punishment." U.S. Const. amend. VIII. This protection applies not only to the terms of a convicted defendants' sentence, but also to the "conditions under which" a prisoner "is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Indeed, "when he State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020); *see also DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 199–200. Thus, the state has a duty to provide for the prisoner's "basic human needs," including "food, clothing, shelter, medical care, and reasonable safety." *Deshaney*, 489 U.S. at 200.

A prison employee or official violates the Eighth Amendment where he or she acts with "deliberate indifference" to the "serious medical needs" of a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment violation for denial of medical care, the inmate must show (1) that he or she was deprived of an objectively

11

serious medical need, and (2) that the defendant knew "of and disregard[ed] an excessive risk to [his or her] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rhinehart v. Scutt*, 894 F.3d 721, 737–38, (6th Cir. 2018).

"In certain circumstances, the need dental care combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). In *Farrow*, the Eleventh Circuit reversed the grant of summary judgment in favor of a prison dentist on the plaintiff's Eighth Amendment claim. *Id.* at 1249. There, the plaintiff had only two lower teeth when he entered the prison system. *Id.* at 1239. His condition caused him to experience severe soreness, swelling, and bleeding in his gums and the difficulty he experienced with eating caused him to lose a significant amount of weight. *Id.* Accordingly, while the *Farrow* court expressly stated that "having few or no teeth and a definite need for dentures" would not constitute a serious medical need in every case, the evidence of plaintiff's "pain, continual bleeding and swollen gums, two remaining teeth slicing into gums, weight loss, and such continuing medical problems" was sufficient to establish a serious medical need. *Id.* at 1244-45.

Here, though Plaintiff states he complained to Westbay that he could not eat, he provides no evidence to show he suffered ill effects similar to those of the plaintiff in *Farrow*. He does not allege and provides no evidence of facial swelling, bleeding, weight loss, or other medical problems that could be traced to his claimed inability to eat. Moreover, Plaintiff testified that he was able to eat things like hamburgers, hot dogs, tuna fish, potatoes and vegetables. (ECF NO. 97-7, PageID.2025.) Furthermore, although Plaintiff testified that chewing was painful for him, there is no evidence in the record that

12

Plaintiff complained of pain to Westbay. Westbay spoke with Plaintiff frequently when he was outside her office door and later testified that it did not appear to her that Plaintiff a serious medical need. (ECF No. 97-7.) Nor is there any evidence that the dentist noticed a serious medical need of Plaintiff's even though she too spoke with him frequently.

Even if Plaintiff did provide evidence to satisfy the objective component of the Eighth Amendment analysis, he would then be required to provide evidence to show the subjective component—that the defendant knew "of and disregard[ed] an excessive risk to [his or her] health or safety." *Farmer*, 511 U.S. at 837. Plaintiff claims Westbay denied him care even though the dentist had previous determined that Plaintiff needed dentures, but provides no evidence that Westbay had the authority to change the MDOC policy. Moreover, there is no evidence that Westbay denied or delayed treatment of her own accord or in violation of any policy, rule, or law. Her role as a dental assistant was limited to office work such as scheduling, ordering supplies, and reviewing and responding to kites from prisoners seeking treatment. (ECF No. 97-7.)

For these reasons, even if Plaintiff could show he exhausted his claim against Westbay or that there was no need to exhaust the claim, his Eighth Amendment claim against the dental assistant would fail.

**IV.    ADA and Rehabilitation Act Claims Against MDOC**

Defendants claim that Plaintiff's claims under the ADA and Rehabilitation Act fail as he merely disagrees with his medical treatment and he failed to provide evidence of discrimination due to his disability. (ECF No. 97, PageID.1945.)

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act prohibits excluding a disabled person from a program that receives federal financial assistance solely by reason of his or her disability. 29 U.S.C. § 794.

For the most part, ADA and Rehabilitation Act claims are evaluated similarly. *See Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000). To establish a prima facie ADA Title II case, "a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). The Rehabilitation Act requires for a prima facie case that a plaintiff show "(1) that he is disabled; (2) that he was otherwise qualified ...; (3) that he was excluded solely by reason of his disability; (4) and that the relevant program is receiving federal financial assistance." *Doe v. Salvation Army in U.S.*, 531 F.3d 355, 358 (6th Cir. 2008). The Rehabilitation Act's causation standard differs from the ADA's: the ADA requires that discrimination occur "because of" a plaintiff's disability, and the Rehabilitation Act requires that it occur "solely by reason of" a plaintiff's disability. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012) (en banc). Still, courts frequently analyze together claims brought under the two statutes.

"Two types of claims are cognizable under [ADA] Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton County*, 870 F.3d 471, 488 (6th Cir. 2017). A plaintiff alleging intentional discrimination—that is, alleging that their "disabilities were actually considered by the [defendant] in formulating or implementing" the challenged discriminatory conduct, *McPherson v. Michigan High*

14

*Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997)—must "present evidence that animus against the protected group was a significant factor in" the discriminatory conduct, *Anderson*, 798 F.3d at 357 (quoting *Turner v. City of Englewood*, 195 F. App'x 346, 353 (6th Cir. 2006)). By contrast, a plaintiff alleging a failure-to-accommodate claim does not need to make the animus showing. *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 909–10 (6th Cir. 2004); *Roell*, 870 F.3d at 488. Instead, "refusal to provide a reasonable accommodation can serve as direct evidence of disability discrimination." *Keller v. Chippewa Cnty., Mich. Bd. of Comm'rs*, 860 F. App'x 381, 385 (6th Cir. 2021) (citing *Roell*, 870 F.3d at 488; *Ability Ctr.*, 385 F.3d at 907–08). When a plaintiff shows that the proposed modification is needed to avoid the denial of services or benefits, the causation requirement is satisfied. *Madej v. Maiden*, 951 F.3d 364, 373 (6th Cir. 2020).

Plaintiff seems to suggest his claim is one for reasonable accommodation, but neglects to connect record evidence to a purported prima facie case. (ECF No. 99, PageID.2166.) Notably, the evidence already brought to this Court's attention defeats the claim—Plaintiff testified that he was not denied the opportunity to participate in programs or denied the benefit of services because of his disability. (ECF No. 97-8, PageID.2047-48) ("There's nothing I tried to get involved with"; "I've never tried to sign up for any programs.") In addition, Plaintiff provides no evidence (such as MDOC policies, expert opinion, or similarly situated individuals) to show he was otherwise qualified for the accommodations he requested. It is clear from this record that Plaintiff is dissatisfied with the medical treatment he is being provided, but a claim such as this is one for medical malpractice. (*See* ECF No. 97-8, PageID.2055 "Q: [A]s far as the ADA claim . . . what do you want the MDOC to do? A: I want[ ] the air mattress. I want[ ]the roho cushion. I want[ ]

15

a brace for my stump . . . I want the pain meds . . . .") As such, Plaintiff cannot support an ADA or Rehabilitation Act claim. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA would not be violated by a prison's failure to address the medical needs of its disabled prisoners and that the statute "does not create a remedy for medical malpractice"); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (holding that an Rehabilitation Act and/or an ADA claim cannot be based on medical treatment decisions); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (inmate's claims under RA and ADA were properly dismissed for failure to state claim as they were based on medical treatment decisions.)

**V.     Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. (ECF No. 97)

**SO ORDERED.**

                                                   <u>s/Nancy G. Edmunds</u>
                                                   Nancy G. Edmunds
                                                   United States District Judge

Dated: September 30, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2023, by electronic and/or ordinary mail.

                                        <u>s/Lisa Bartlett</u>
                                        Case Manager